ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CARLOS ENRIQUE LEHDER RIVAS
        Petitioner

Vs.

Civil Action #1:07-CV-01733 -RWR

HARLEY G. LAPPIN et Al.
        Respondents

MOTION IN RESPONSE, OPPOSING RESPONDENT`S MTION TO TRANFER PATINO FOR A WRIT OF HABEAS CORPUS.

The Petitioner, Carlos E. Lehder, acting pro-se respectfully opposes the Respondent`s motion to transfer Petitioner's 2241, Writ of Habeas Corpus to the 11th(Eleventh) circuit court of appeals, for the main following reasons:

1.The Respondent`s (Government) have erroneous or purposely mischaracterized Petitioner's 2241, Habeas Corpus petition, as a 28 USC. 2255m motion "to vacate, set aside, or correct sentence".
Petitioner in no way is seeking to file a 2255 motion. Petitioner is not challenging his conviction nor the 30 year sentence he already served, only the execution of any sentence over 30 years.

RECEIVED
MAR 0 7 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

2. The Respondents, (Government), motion for the Transfer of Petitioner's Petition for a writ of Habeas Corpus, is not only erroneous, but also contrary to the constitution, laws, and 28 USC. 2241, statute.

3. The Petitioner assures the court, he is presenting supreme court rulings, as well case law from U.S. District and appelate courts, all in support and recognition that 28 USC. 2241, Habeas Corpus is the proper statute to raise violation of treaties to which the U.S is signatory, and allows challenges to sentences insofar as they violate treaties of the United States.

4. Additionaly, the antiterrorism and effective deaths penalty act of 1996 ("AEDPA") <u>does not</u> purport to alter the Federal Court's Habeas Corpus jurisdiction over "Violation of the constitution or laws or treaties of the United States"
Please see, <u>FELKER VS. TURPIN</u> 518, US, 651, 658, 64, (1996) Supreme Court.

5. Petitioner Motions the honorable court to deny the Respondent's Motion to transfer Petitioner's Petition for a Writ of Habeas Corpus, in its entirely, since Petitioner's 28 USC 2241, Habeas Corpus is the proper and cognizant statute for this extradites foreigner in Federal Prison.

## PROCEDURAL HISTORY IN THE U.S COURT FOR THE DISTRICT OF COLUMBIA

6. On September 21, 2007, Petitioner files a Petition for a writ of Habeas corpus, the district court filed it, under civil action # 1: 07-cv-01733 (RWR)

7. On December 11th, 2007, Respondents, represented by Assistant U.S. Attorney Timothy W. Lucas, responded by filing a governments motion to transfer Petitioner's petition for a writ of Habeas corpus, to the 11th cir court of appeals.
Asking the court to characterize Petitioner's 28 USC 2241 as a 2255 motion.

8. The district court on December 13, 2007, entered an order for petitioner to respond to the Governments motion by January 14, 2008.

9. Petitioner only received the Court's order, on January 8 and on January 9th, filed a motion for an extension of time to respond, up to march 15. Due to convalesces from clinical surgery, "medial impediments" as well as lack of aces to a law library or a typewriter.
Attorney for the Respondents, assistant U.S. Attorney Timothy W. Lucas, was only served with a copy.

10. CASE LAW IN SUPPORT OF WRIT FOR INDUCTIVE, DECLARATORY AND OTHER RELIEF (UNDER 28 USC. 2241).

GROUND ONE: (HABEAS CORPUS) (FORMAT PAGES)

Petitioner claims, "Respondents are in violation of the extradition treaty sentencing limitations"...

11. " On March 22, 2007, Petitioner completed serving thirty (30) years, maximum term permited under the treaty", "Petitioner is not challenging his conviction, only the illegal length of this excessive 55, year sentence".

12. Petitioner agrees that he had to serve first, the treaty's 30 year sentence, in order to be entitled to his freedom, and he has done so. His freedom continues to be denied by respondents, thus, Petitioner`s plea for justice is done under RAUSHEER, SUPREME COURT: QUOTE "RAUCHER, GAVE EXTRDITED DEFENDANTS THE RIGHT TO CLAIM THE RULE`S PROTECTION" please see U.S V.VREEKEN 803, F2D, 1085, 1088 (10TH CIR. 1986).

13. The Supreme Court Quote: "Individual rights of a Foreigner Prisoner under treaty, are enforceable in Habeas Corpus Proceedings" Please see, Republic of Germany Vs. United States 526 US 111 (1999) Also BREARD VS. GREEN, 523 US 371 -377 (1998)

14. <u>DOMINGUEZ VS. NEVADA</u> 526, US 1156 (1999), ID. 528 US. 963 (1999) S. Court Quote, "28 USC 2241, Habeas Corpus is the proper statue to raise violation of treaties to which the Untied States is signatory.

15. Similarly situated Treaty sentencing case- W. Herrmann Vs. Edwing Meese (U.S Attorney general). 849, F2D, 101, (3rd cir 1988) Foreign Federal Prisoner W. Herrmann, filed a Petition for a writ of Habeas Corpus under 28 USC, 2241, contesting only the Length of this incarceration, claiming, his "continued incarceration was in violation of the applicable provisions of the treaty".

16. I n HERRMANN VS. ATTORNEY GENERAL E. MEESE, two- standards of review, are established-
A. The United States Attorney's office, the United States District Court, as ell the third circuit court of Appeals and the Attorney general of the United States, all and every one agreed that HERRMANM`S 28 USC 2241, PETITION.

17.For a Writ of habeas Corpus, was the proper plea and conniption statue for foreigner, to raise violations of the treaty under which they were delivered to the U.S judicial system, and the challenge on the extent to which his sentence has been executed-under the treaty's punishment-limitations.

18.B. As standard of Review- Herrmann also established that the attorney general of the United States, appropriately might be named as the respondent to an alien habeas petition involving extradited defendant and sentencing limitations.

19. Obviously, at no time did the government nor the courts, considered that Herrmann's 2241, Habeas corpus instant petition "was" in effect a motion under USC 2255. "As the assistant US Attorney Timothy W. Lucas, is assuming in "Lehder's Habeas Corpus Petition".

20. The, extraordinary circumstances of Lehder's case, not only evolves violation of the treaty's sentencing limitations, and that the respondents, including the attorney general of the United States, can not continue to hold Lehder, for an extra unduly "25 years in prison," when lehder has already served his statutory 30 year sentence, maximum term permissible under the treaty.

All supported documented by a cooperation agreement which the attorney for the case and prosecution of Panamanian general Manuel Noriega.

21. General M. Noriega has already been discharged after serving his statutory 30 years on Federal Prison.

Contrary to the law, still appears that respondents could be wanting to "punish" petitioner for his substantial assistance to authorities in the Noriega case.

22. Petitioner lives with case law, PERKINS VS. HENDERSON, 881, F SUPP, 55, 59 (D. D. C. 1995) "TT is well settled in this jurisdiction and elsewhere that and attack on the execution (of a sentence) may be accomplished only by way of Habeas Corpus in the District of confiment. "Also, Jiminy V. Hass, 245, F3d, 144, (2nd cir 2001). "emotion pursuant to 2241, generally challenges the execution of a Federal Prisoner's sentence".

23. SUBJECT MATTER JURISDICTION

Subject matter jurisdiction carries the substance requirement that the Habeas Corpus Petition challenge the Legality of his custody status on the ground that is "in violation of constitution or laws or treaties of the United States. (28 USC. 2241 ©(3)"

Petitioner is in full compliance with the subject matter jurisdiction requirement, and 2241 is the proper vehicle to redress ground one, tow and there of his claim and petition for a writ.

GROUND THREE: HABEAS PETITION – FORMAT PAGES:

24. Because respondents are in violation of the U.S and Colombia extradition treaty sending limitations, 2241 statue grants access to court.

25. Respondent Charles E. Schumer, US congressman (Washington), engaged in a conspiracy to obstruct justice, corruptibly persuaded the U.S. Attorney General's office and others, to violate federal witness C. Lehder`s constitutional rights, and due process, causing

26 The U.S judiciary to violate the valid extradition treaty between the United States and Colombia and also the sentencing limitation agreement between the Untied States and Carlos Lehder.

27. Multi district cooperation agreement authorized by the respondents, the U.S. attorney general.Robert S. Mueller III, in 1991; pertaining to petitioner's court testimony against general Manuel Noriega, former dictator of Panama and Powe of the USA.

On September 9, 2007 General Noriega was discharged after serving hi 30 year sentence.

## 28. CLOSING ARGUMENT

The respondents, Harley G. Lappin, Director of the Bureau of Prisons; the Attorney general, Michael Mukasey.

29. Robert S. Mueller III, Director of the FBI, and US. Congressman Charles E. Schumer, are under the jurisdiction of the U.S district Court of the District of Columbia, Washing . C. so is the Petitioner.

30. Respondent Charles E. Schumer (U.S congressman) interference in petitioner's judicial process, obstructing justice, constitute a very serious offence, as recently, United States Senator Bill Helson, explains his position to Petitioner.

31. Quote "members of Congress are precluded from inquiring into matters pending before the courts by provisions of the constitution that mandate a separation of Power's between the judicial, executive, and legislative branches.

"I am unable to intervene because my involvement in your present situation may be viewed as interference in the judicial process."

Bill Nelson.

November 26/2007

Please see: EXHIBIT # 01

32. Additionally, the respondent (government) appear, to be confusing Petitioner's gradual exposition of cumulative numerous violations of petitioner's constitutional rights, plus statutory and agreement violations at sentencing. Said the facts, documented violations are to enlight the Court on the full extent of the lengthy record.

33. For those violations NOT MENTIONED WITHIN GROUNDS, ONE, TOW AND THEREE, Petitioner is not claiming for relief. They are mainly supporting the record.

34. Wherefore, again, the Petitioner is attacking "the computation and execution of his sentence rather than sentence itself", " judicial review is available under section 2241, in district of confinement, not section 2255, in district of sentencing" Please see,

U.S. Vs. Miller, 871, F2d, 488, 489, 90 4th cir 1989, Plus, Hermann Vs. Attorney General E. Meese.

Petitioner Lehder is challenging the full execution not the imposition of his federal sentence.



Exhibit # 01

# United States Senate
WASHINGTON, DC 20510-0905

BILL NELSON
FLORIDA

November 26, 2007

Mr. Carlos Enrique Lehder Rivas, #06461-018
320 First Street, Northwest
Room 524 IMS
Washington, District of Columbia 20534

Dear Mr. Rivas:

Thank you for your recent letter concerning your case. I appreciate your frustration with this matter.

Your situation appears to involve litigation or may require litigation under the judicial system. Members of Congress are precluded from inquiring into matters pending before the courts by provisions of the Constitution that mandate a separation of powers between the Judicial, Executive, and Legislative branches. I am unable to intervene because my involvement in your present situation may be viewed as an interference in the judicial process.

However, you may choose to contact your attorney or call the Florida Bar Referral Service at (800) 342-8011. They can provide a referral for the Legal Aid organization in your community or for an attorney who will agree to provide a one hour consultation for a small fee.

Again, thank you for getting in touch with me. I hope this matter will be resolved to your satisfaction. If I can be of further assistance with any other matter, please do not hesitate to contact me.

Sincerely,

Bill Nelson

BN/cb

United States Senator Bill Nelson, Landmark Two, 225 East Robinson Street, Suite 410, Orlando, Florida 32801
Telephone: (407) 872-7161 • Toll-Free in Florida Only (888) 671-4091 • Fax: (407) 872-7165
http://billnelson.senate.gov

35. PRAYER FOR RELIEF

For al the stated reasons and case law, Petitioner motions the Court respectfully A) to accept jurisdiction of his petition for a writ of Habeas Corpus. ( 28 USC 2241).

B. To order the denial of respondents motion to "transfer Petitioner's petition to the 11th circuit court of appeals as a 2255 motion".

C. To order a Hearing before this court on any contested, factual or legal issues, and production of petitioner Carlos Lehder.

D. To order the granting of Petitioner's pendening motion of an appointing of Legal Counsel.

E. Gran a writ of Habeas corpus on behalf of Petitioner Lehder, ordering his immediate release from prison, and to grant all other relief on behalf of the petitioner Lehder, and against the respondents, as this court, deems just and proper.

Respectfully submitted,

Carlos Lehder  *[signature]*   March 5/2008

Carlos E. Lehder
#064-61-018
320 First St. N.W.
Room #524
Washington DC
20534

10

United States District Court
for the District of Columbia -

Certificate of Service

I Hereby certify that a true and complete copy of the foregoing motion in response, has been served Via Certified Mail/Return Receipt # 700 2760 002 6517 0366, To the Assistant U.S. Attorney Timothy W. Lucas 555 4th Street, N.W. Room 10-443- Washington DC. 20530.

On this date: March 5/2008

Sincerely Submitted

Carlos E. Lehder.

By: Carlos E Lehder
#06461-018
320 First St. N.W.
Room # 524 IMS.
Washington DC. 20534.

March 5/2008

**Westlaw.**

849 F.2d 101  
849 F.2d 101  
(Cite as: 849 F.2d 101)

Page 1

H  
Herrmann v. Meese  
C.A.3 (Pa.),1988.

United States Court of Appeals,Third Circuit.  
William HERRMANN, Appellant,  
v.  
Edwin MEESE, III, Attorney General, Robert Honsted, Warden.  
No. 87-3555.

Argued May 31, 1988.  
Decided June 17, 1988.

Prisoner transferred to the United States to serve British sentence for possessing counterfeit currency petitioned for writ of habeas corpus. The United States District Court for the Western District of Pennsylvania, Paul A. Simmons, J., denied writ, and appeal was taken. The Court of Appeals, Seitz, Circuit Judge, held that transfer statute was not inconsistent with transfer treaty, and thus prisoner was not entitled to have his British sentence adapted to what it would have been had he been convicted in United States.

Affirmed.

West Headnotes

**Treaties 385** ⇐ 8

385 Treaties  
  385k8 k. Construction and Operation of Particular Provisions. Most Cited Cases  
Provision in treaty relating to transfer of prisoners from foreign countries, which provided for adaption of foreign sentence to local law, was permissive only, and thus transfer statute, which provided that foreign sentence would be served without adaption, was not inconsistent with treaty. 18 U.S.C.A. § 4105(a).

*101 Joel B. Johnston, Law Clerk (argued), George E. Schumacher, Federal Public Defender, Pittsburgh, Pa., for appellant.

Constance M. Bowden, Asst. U.S. Atty. (argued), J. Alan Johnson, U.S. Atty., W.D. Pennsylvania, Pittsburgh, Pa., for appellees.

Before SEITZ, SLOVITER, and HUTCHINSON, Circuit Judges.

**OPINION OF THE COURT**

SEITZ, Circuit Judge.

William Herrmann appeals the district court's order denying his petition for a writ of habeas corpus. 28 U.S.C. § 2241 (1982). We have jurisdiction pursuant to 28 U.S.C. §§ 1291, 2253 (1982).

Herrmann was convicted in England of "possessing counterfeit [United States] currency with intent to pass or tender them as genuine or to deliver them to another with intent that he or another should pass or tender them as genuine." He was sentenced to eight years imprisonment. The United States subsequently requested the transfer of Herrmann to the United States pursuant to the European Convention on the Transfer of Sentenced Persons ("the Treaty") and to 18 U.S.C. §§ 4100-4115 (1982) ("the Transfer Statute") (relating to transfer of prisoners to or from foreign countries). Herrmann was transferred and is incarcerated at the federal prison at Loretto, Pennsylvania. He has served three years in connection with this offense.

Herrmann asserted in his habeas corpus complaint that his continued incarceration was in violation of the applicable provisions of the Treaty, [FN1] signed in 1983, which states in pertinent part:

FN1. Herrmann is contesting only the length of his incarceration, not the appropriateness of his transfer.

ARTICLE 9

1. The competent authorities of the administering state shall:  
[a] continue the enforcement of the sentence ...

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

849 F.2d 101                                                                 Page 2
849 F.2d 101
(Cite as: 849 F.2d 101)

*102 ARTICLE 10

1. In the case of continued enforcement, the administering States *shall* be bound by the legal nature and duration of the sentence as determined by the sentencing State.

2. If, however, this sentence is by its nature or duration incompatible with the law of the administering State, ... that State *may*... adapt the sanction to the punishment or measure prescribed by its own law for a similar offence. As to its nature, the punishment or measure shall, as far as possible, correspond with that imposed by the sentence to be enforced. It shall not aggravate, by its nature or duration, the sanction imposed in the sentencing States, nor exceed the maximum prescribed by the law of the administering State.

(emphasis added).

Herrmann argues that the eight-year sentence he received is sharply in contrast with the maximum sentence he could have received in the United States for the same type of criminal activity. He contends that the United States offense most similar to the one for which he was convicted in England is 18 U.S.C. § 480 (1982) (relating to possession of foreign counterfeit currency; one-year maximum sentence) rather than 18 U.S.C. § 472 (1982) (relating to possession of counterfeit United States currency; fifteen-year maximum sentence) as the government contends. Herrmann asserts that, in consequence, his sentence should have been adapted to a one-year term under Article 10.2 of the Treaty so as not to be incompatible with the law of the administering state. However, the language of Treaty Article 10.2, in contrast with the mandatory language of Treaty Article 10.1, is clearly permissive. It plainly gives the administering state the option to adapt sentences. Thus, Herrmann gets no comfort from the opening sentence of Article 10.2.

Herrmann next contends that the mandatory language of the last sentence of Treaty Article 10.2 requires that he be released. Herrmann argues that such language requires that his sentence be no greater than the maximum sentence in the United States of one year for the offense that he contends is most similar to the English offense.

Although Article 10.2 is arguably ambiguous because its first sentence is permissive and its last sentence is mandatory, the reading proffered by Herrmann is implausible in light of logic and the Explanatory Report. Herrmann must be asserting that the word "it" in the last sentence of article 10.2 refers to "the sentence" rather than "the adapted sentence." This interpretation, however, would render the last sentence senseless. To illustrate, a sentence cannot aggravate itself but an adapted sentence could aggravate the sentence of the sentencing court. Therefore, the word "it" must refer to the adapted sentence. Reading Article 10.2 as a whole, we conclude that the last sentence has effect *only if* the convict's sentence is adapted under the first sentence. Therefore, if the administering state chooses not to adapt the sentence, the second and third sentences of Treaty Article 10.2 have no effect.

Portions of the Explanatory Report on the Treaty shed light on our interpretation:

49. Where the administering state *opts* for the "continued enforcement" procedure, it is bound by the legal nature as well as the duration of the sentence as determined by the sentencing state

....

50. If the two states concerned have different penal systems with regard to the division of penalties or the minimum and maximum lengths of sentence, it *might* be necessary for the administering state to adapt the sanction to the punishment or measure prescribed by its own law for a similar offence. Paragraph 2 *allows* that adaptation within certain limits: the adapted punishment or measure must, as far as possible, correspond with that imposed by the sentence to be enforced; it must not aggravate, by its nature or duration, the sanction imposed in the sentencing state; and it must not exceed the maximum prescribed by the law of the administering state. In other words: the administering state *may* adapt the sanction to the nearest equivalent*103 available under its own law, *provided that this does not result in more severe punishment or*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

849 F.2d 101
849 F.2d 101
(Cite as: 849 F.2d 101)

Page 3

*longer detention....* [T]he procedure under Article 10.2 enables the administering state merely to *adapt* the sanction prescribed by its own law in order to make the sentence enforceable. The administering state thus continues to enforce the sentence imposed in the sentencing state, but it does so in accordance with the requirements of its own penal system.

(emphasis added).

Thus, it can be seen that the quoted language supports our conclusion that Article 10.2 would only apply here if the government chose to adapt. But as the quoted provisions of the Transfer Statute show, the United States has opted not to adapt:

18 U.S.C. § 4105 (1982) provides in part:

(a) Except as provided elsewhere in this section, an offender serving a sentence of imprisonment in a foreign country transferred to the custody of the Attorney General shall remain in the custody of the Attorney General under the same conditions and for the same period of time as an offender who had been committed to the custody of the Attorney General by a court of the United States for the period of time imposed by the sentencing court.

Herrmann argues that the Transfer Statute is inconsistent with the Treaty and that the Treaty controls as "last in time." This argument avails Herrmann nothing in light of our conclusion that the controlling language of Treaty Article 10.2 is permissive. Obviously, then, it cannot be inconsistent with the mandatory language of section 4105(a) of the Transfer Statute.[FN2]

> FN2. We need not, therefore, determine which United States offense is most analogous to the offense for which Herrmann was convicted.

Additionally, in view of our disposition, we are not required to address the government's contention that the Treaty is not self-executing.

Furthermore, the Transfer Statute is the appropriate statute governing transfers under the Treaty even though the statute was enacted before the Treaty was signed. There is nothing in the Transfer Statute to suggest that it was not intended to apply to treaties not yet in force. Indeed, the legislative history indicates that the statute *was* intended to apply to future treaties. H.R.Rep. No. 95-720 at 1-2, 28, *reprinted in* 1977 U.S.Code Cong. & Admin.News at 3146-47, 3150.

The judgment of the district court will be affirmed.

C.A.3 (Pa.),1988.
Herrmann v. Meese
849 F.2d 101

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.